UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SCHWARTZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA; DOES 1-10,<br><br>        Defendants. | Case No.: 12-cv-0586-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Mark Schwartz ("Schwartz") alleges the United States of America, while executing a final order of forfeiture issued pursuant to 21 U.S.C. section 853, wrongfully evicted him and changed the locks to his apartment.  Schwartz brought suit alleging three claims: (1) Wrongful Eviction in violation of California state law and San Francisco Administrative Code section 37.9; (2) Violation of California Civil Code section 789.3, which prohibits landlords from using self-help to terminate a tenancy; and (3) Negligence.  (Dkt. No. 1, "Complaint" ("Compl.") ¶¶ 30-45.) Schwartz alleges that this Court has subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680 (2011).

Defendant United States of America ("Government") filed the instant Federal Defendant's Motion to Dismiss seeking dismissal under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).  (Dkt. No. 11 ("Motion" or "Mot.").)  The Government's Motion contends subject matter jurisdiction is not proper under the FTCA and that Schwartz's allegations fail to state a claim upon which relief may be granted.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, pursuant to the criminal conviction of Robert Peterson ("Peterson"), Judge Chin of the Southern District of New York entered a Preliminary Order of Forfeiture including forfeiture of "all of the defendant's right, title and interest" in, among others, 704 North Point St., San Francisco, California ("Subject Property").  (Dkt. No. 12, "Declaration of Lucille Roberts in Support of the Motion to Dismiss" ("Roberts Decl."), Ex. A, "Final Order of Forfeiture" ("FOF") at 3.[1])  In accordance with the requirements of the forfeiture statute, 21 U.S.C. section 853, the United States published notice of the order and its intent to dispose of the property in *The Recorder*, a local San Francisco newspaper.  *Id.* at 3.  The Government also sent notice via certified mail to "all persons and entities known by the Government to have an alleged interest in the North Point Property."  (Roberts Decl., Ex. D, "Government's Application for a Final Order of Forfeiture as to the North Point Property" at 4.)  After noting the Government's efforts to satisfy the statute's notice requirements, the district court entered the Final Order of Forfeiture.  FOF at 3-5, 8.

On September 14, 2009, the district court entered the Final Order of Forfeiture after identifying each of the petitions challenging the Government's claim to the Subject Property and the resolution thereof.  Further finding that:

> no other petitions to contest the forfeiture as to the North Point Property have been filed or made in this action, no other parties have appeared to contest the action to date, and the statutory time periods for doing so, as set forth in Title 21, United States Code, Section 853(n)(2), have expired[.]

FOF at 7.  The district court declared that the Government was "deemed" to have "clear title" in the Subject Property.  *Id.* at 7-8.  The FOF specifically identified the Subject Property as:

> All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 704 North Point Street, San Francisco, California 94109[.]

*Id.* at 1.  "704 North Point Street" is bordered by three streets: North Point Street to the south,

---

[1] Entered in *United States v. Richard Peterson, a/k/a/ "Robert James*," Case No. 04-Cr-752 (S.D.N.Y.).

United States District Court

Northern District of California

1  Leavenworth Street to the east, and Columbus Avenue to the north.  (Dkt. No. 17-1, "Declaration of

2  Melissa Sladden in Support of the Motion to Dismiss," Ex. A.)   In addition, the Subject Property

3  contains more than one building with multiple addresses, including "704 North Point Street," "2701

4  Leavenworth Street," and "1301 Columbus Street."  *Id.*; (Dkt. No. 17-2, "Declaration of James

5  Eastman in Support of the Motion to Dismiss" ¶ 6.)

6       Plaintiff alleges that when he returned to his apartment at 1301 Columbus Street, San

7  Francisco, California ("Apartment") on or about July 2, 2010, he discovered that the locks had been

8  changed.  Compl. ¶ 13.  He found at the Apartment's gate a business card left by Supervisory

9  Deputy U.S. Marshal McCloud ("McCloud"), who had seized the Subject Property and changed the

10  locks earlier that same day.  *Id*; Roberts Decl., Ex. C at 1.  McCloud explained over the phone that

11  the United States Marshal Service ("USMS") seized the Apartment pursuant to the FOF.  Compl. ¶

12  15.  The parties met on July 6, at which time McCloud allegedly told Plaintiff that he could no

13  longer reside in the Apartment and that he had ten minutes to gather his property.  *Id.* ¶ 16; Roberts

14  Decl., Ex. E at 1.  Plaintiff allegedly gathered as many personal belongings as possible in the time

15  allotted and allegedly signed a Notice to Vacate.  Compl. ¶ 17; Roberts Decl., Ex. E at 1.

16       Plaintiff alleges he was afforded a second brief opportunity to collect his belongings in July

17  2010, at which time the USMS allegedly told him he would be afforded one more opportunity to

18  collect property after repair to the exterior stairs leading to the Apartment.  Compl. ¶ 18.  Plaintiff

19  alleges that he was unable to access the property again until July 2011, nearly a full year later.  *Id*. ¶

20  19.  When he entered the Apartment in July 2011, it was allegedly "obvious that his residential

21  dwelling unit had been ransacked.  [His] clothing and papers had been strewn about the alleyway

22  area . . . and many of [his] papers and valuables were missing[.]"  *Id.* ¶ 20.

23       Plaintiff alleges that, prior to the Government's seizure, he had been a residential tenant in

24  the unit for approximately 25 years and that he was paying substantially below market value

25  because of his extended tenancy and local rent control ordinances.  Compl. ¶¶ 9, 11.  He alleges he

26  paid $400 monthly to Leon Toppin from at least 2008 through June 2010.  (Dkt. No. 16,

27  "Declaration of Mark Schwartz" ("Schwartz Decl.") ¶ 7.).  No written lease between Toppin and

28  Schwartz appears to have existed.  *See id.*; Roberts Decl., Ex. E at 1.  However, Toppin, through

United States District Court
Northern District of California

1   counsel, received notice of the forfeiture from the Government after the issuance of the Preliminary

2   Order of Forfeiture.  FOF at 5.  Indeed, Toppin's attorney filed a petition for an ancillary hearing

3   under the relevant forfeiture statute.  *Id.*  The district court later signed a Stipulation and Order of

4   Withdrawal of that petition.  FOF at 6.

5        Plaintiff challenges whether the FOF included 1301 Columbus.  Compl. ¶ 29.  According to

6   Plaintiff 's description, "1301 Columbus" is a distinct property from "704 North Point" and the

7   other addresses the USMS seized in connection with the forfeiture of the Subject Property.  Compl.

8   ¶ 29.  Plaintiff alleges that each address has its own mailbox, entrance, and lock, and that "1301

9   Columbus" in particular is separately metered for gas and electricity.  Schwartz Decl. ¶ 5.

10       The Government by contrast maintains that 1301 Columbus, 1303 Columbus, 704 North

11  Point, and 2701 Leavenworth are all part of one "complex" and sit on one parcel of land.  Mot. at 2.

12  It alleges that 704 North Point and the Apartment are part of the same physical structure, with the

13  former located on the first floor and the latter on the third floor.  *Id.*; Roberts Decl., Ex. E at 1.

14       Plaintiff filed an administrative claim on November 4, 2010.  Roberts Decl., Ex. I.  On

15  August 17, 2011, the USMS denied the claim.  Compl. ¶ 2.  Plaintiff subsequently filed this action

16  on February 6, 2012.  The Government filed the instant Motion on May 8, 2012.  Plaintiff

17  responded on May 29, 2012.  (Dkt. No. 15, "Plaintiff's Memorandum of Points and Authorities"

18  ("Opposition" or "Opp.").)  Defendant filed its Reply on June 12.  (Dkt. No. 17, "Reply Brief in

19  Support of Federal Defendant's Motion to Dismiss" ("Reply").)

20  **II.   DISCUSSION**

21       **A.  Legal Framework**

22       The Government uses both Rule 12(b)(1) to challenge this Court's subject matter

23  jurisdiction and Rule 12(b)(6) to test the legal sufficiency of Plaintiff's claims.  Although there is no

24  mandatory "sequencing of jurisdictional issues," jurisdictional questions ordinarily must precede

25  merits determinations in dispositional order.  *Sinochem Int'l. Co. v. Malaysia Int'l. Shipping Corp.*,

26  549 U.S. 422, 431 (2007) (citing *Ruhrgas AG v.Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).  The

27  Court therefore proceeds first with its jurisdictional analysis of Defendant's Motion under Rule

28  12(b)(1).

### 1. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004).  Such motions may be either "facial" or "factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a facial attack, the movant argues that the allegations of a complaint are insufficient to establish federal jurisdiction.  *Id.*  By contrast, a factual attack or "speaking motion" disputes the allegations that would otherwise invoke federal jurisdiction.  *Id.*

In resolving a factual attack, district courts may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Id.* (citing *Savage*, 343 F.3d at 1039 n.2).  Courts consequently need not presume the truthfulness of a plaintiff's allegations in such instances.  *Id.* (citing *White*, 227 F.3d at 1242).  Indeed, "[o]nce the moving party has converted a motion to dismiss into a factual motion by presenting affidavits or other evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.* (quoting *Savage*, 343 F.3d at 1039 n.2).  Further, the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of jurisdictional claims, except where the jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits.  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733-35 (9th Cir. 1979)).

Plaintiff invoked this Court's jurisdiction and consequently bears the burden of establishing subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994). Whether the United States has waived its sovereign immunity is a question of the Court's subject matter jurisdiction.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  The plaintiff therefore bears the burden of establishing a waiver of sovereign immunity.  *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

1     The Court treats Defendant's motion as a factual 12(b)(1) attack and therefore considers all

2  admissible evidence in the record. [2]

3     **B.  Analysis**

4     In his Complaint and Opposition, Plaintiff alleges subject matter jurisdiction under the

5  FTCA only.  Compl. ¶¶ 1-3; Opp. at 8-9.  The FTCA waives sovereign immunity and thereby

6  allows for federal subject matter jurisdiction over a certain category of torts committed by federal

7  employees or agencies.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Specifically, it waives

8  immunity for claims that are:

9     [1] against the United States, [2] for money damages, . . . [3] for injury or loss of
10    property, or personal injury or death [4] caused by the negligent or wrongful act or
      omission of any employee of the Government [5] while acting within the scope of his
11    office or employment, [6] under circumstances where the United States, if a private
      person, would be liable to the claimant in accordance with the law of the place where
12    the act or omission occurred."

13 *Id.* at 478 (quoting 28 U.S.C. 1346(b)(2)) (alterations in original).  Although claims under the

14 FTCA may arise from the acts or omissions of federal employees or agencies, the statute provides

15 the exclusive remedy for claims of tortious conduct against the United States only.  *Id.*; *F.D.I.C. v.*

16 *Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

17    Plaintiff contends subject matter jurisdiction through the FTCA for each of his three claims-

18 -wrongful eviction, violation of Cal. Civ. Code section 789.3, and negligence.  Compl. ¶¶ 1-3.  He

19 contends such jurisdiction is proper because his claims sound in tort; he has exhausted his

20 administrative remedies; and he satisfies all other requirements of the FTCA.  *Id.*  Defendant

21

22 [2] Plaintiff contends that a summary judgment standard must be applied because the question of
   jurisdiction is intertwined with the merits of the case.  Opp. at 10.  Typically, a trial court must
23 consider jurisdiction and the merits to be intertwined when a statute provides the basis for both the
   court's subject matter jurisdiction and the plaintiff's substantive claim for relief.  *Safe Air*, 373 F.3d
24 at 1039-40 (citing *Thornhill*, 594 F.2d at 734).  Plaintiff contends this is the case here with the
   FTCA.  However, the FTCA serves only to waive sovereign immunity for claims that would
25 otherwise be barred by such immunity; it does not itself create any substantive cause of action.  *See,*
   *e.g.*, *Delta Savings Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001) (emphasizing that
26 the source of substantive liability under the FTCA is the law of the relevant State).  Because the
   FTCA creates no substantive cause of action, it cannot be the basis for plaintiff's substantive
27 claims.  Plaintiff's argument in favor of a summary judgment standard thus fails.

28

United States District Court
Northern District of California

United States District Court

Northern District of California

1  counters that the FTCA cannot provide jurisdiction over Plaintiff's claims because the claims

2  challenge an order of forfeiture issued pursuant to 21 U.S.C. section 853.  Mot. at 11-13.

3  Consequently, the Government argues, section 853 alone controls.  *Id.*

4        **1.  21 U.S.C. § 853**

5        To resolve this dispute, the Court turns first to 21 U.S.C. section 853, the criminal

6  forfeiture statute.  With respect to forfeited property, the statute orders the Attorney General to

7  "direct the disposition of the property by sale or any other commercially feasible means, making

8  due provision for the rights of any innocent persons."  21 U.S.C. § 853(h).  Accordingly, after the

9  entry of a preliminary order of forfeiture, the statute directs the Government to provide notice to

10  third parties of both the order and its intent to dispose of the property "in such manner as the

11  Attorney General may direct."  21 U.S.C. § 853(n)(1).  Within thirty days of notice, any person

12  other than the relevant criminal defendant can petition the court for an ancillary hearing under

13  section 853(n) to adjudicate said petitioner's alleged interest in the property.  21 U.S.C. § 853(n)(2).

14  An ancillary hearing under section 853 is thus the exclusive proceeding in which a third party may

15  claim an interest in the forfeited property.  *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir.

16  2005) (citing *Libretti v. United States*, 516 U.S. 29, 44 (1995)).  Upon resolution of all petitions or

17  expiration of the thirty-day timeframe, the statute deems that "the United States shall have clear

18  title" to the property.  21 U.S.C. § 853(n)(6)-(7); *see United States v. Hooper*, 229 F.3d 818, 822

19  (9th Cir. 2000).

20        Subsections 853(k) and (n) govern challenges to orders of forfeiture.  Subsection (k) bars a

21  plaintiff from filing any claim against the United States challenging its interest in forfeited

22  property, except as provided in subsection (n).  21 U.S.C. § 853(k).  Subsection (n) in turn provides

23  only for ancillary hearings, which Plaintiff does not seek.  21 U.S.C. § 853(n).  Neither subsection

24  provides this Court with authority to exercise jurisdiction over tort claims challenging the validity

25  of a final order of forfeiture.  *See, e.g.*, *Nava*, 404 F.3d at 1123-25.  Consequently, if section 853

26  governs Plaintiff's claims, this Court will not have subject matter jurisdiction over them.

27        Plaintiff argues section 853 is not controlling because his claims do not challenge the FOF.

28  Instead, he contends, they dispute the Government's *interpretation* of the FOF as encompassing

1301 Columbus and thereupon authorizing the termination of his tenancy.  Compl. ¶ 29; Opp. at 13.  By contrast, the Government contends section 853 must govern because Plaintiff's claims arise from an alleged interest in a property subject to forfeiture under section 853.  Reply at 8.

The Court agrees.  First, implicit in Plaintiff's wrongful eviction claim is the contention that Plaintiff retained a leasehold in the Subject Property.  The FOF recognizes no such interest; rather, it plainly holds that the Government shall have "clear title" to the property.  FOF at 8; 21 U.S.C. § 853(n)(7).  Plaintiff's assertion to the contrary is a direct challenge to the validity of that holding.

Plaintiff's claim for violation of Cal. Civ. Code section 789.3 also requires, by necessity, an underlying leasehold interest.  Section 789.3 prohibits a landlord from changing the locks to a property "with intent to terminate the occupancy under any lease or other tenancy . . . of property used by a tenant as his residence[.]"  Cal. Civ. Code § 789.3(b).  As set forth above, the assertion of such an interest contradicts the FOF's holding that the Government took "clear title" to the property.  Accordingly, Plaintiff's claim under section 789.3 challenges the FOF's validity.

Plaintiff's third claim for negligence arises from an alleged duty of the Government to protect Plaintiff's property stored in the Apartment, to allow him access to the building, and to comply with local eviction laws in seizing the property.  Compl. ¶¶ 37-45.  These allegations again stem from Plaintiff's alleged leasehold interest.

Each of Plaintiff's claims arises from a challenge to the enforceability of a final order of forfeiture.  Because section 853 is the relevant forfeiture statute, it governs each claim.  In each instance, section 853 not provide for subject matter jurisdiction over Plaintiff's claim.

### 2.  Federal Tort Claims Act

Although Plaintiff asserts the FTCA provides for subject matter jurisdiction over his claims, he has provided no authority that the FTCA should supplant section 853.  Nor does he provide authority for disregarding the Ninth Circuit's holding in *United States v. Nava*, which stated, "Section 853(n) is the exclusive proceeding in which third parties may claim an interest in property subject to criminal forfeiture."  404 F.3d at 1125 (citing *Libretti*, 516 U.S. at 44).  The Court consequently finds that it lacks subject matter jurisdiction under the FTCA and therefore that Plaintiff has not alleged any sufficient basis for subject matter jurisdiction.

For these reasons, Plaintiff's claim is **DISMISSED**.  Because Plaintiff has not provided a viable alternative, the Complaint is dismissed **WITHOUT LEAVE TO AMEND**.

### III.     CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Motion to Dismiss. This order terminates Docket Number 11.

Defendant shall forthwith prepare a form of Judgment and submit it to the Court within fourteen days, and after providing Plaintiff with an opportunity to approve as to form.

**IT IS SO ORDERED.**

Dated: July 25,2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

9